Ronald W. Goss, WSBA No. 21575
(admitted *pro hac vice*)
KeyBank Law Group
1101 Pacific Ave., Lower Level
Tacoma, WA 98402
Telephone: (253) 305-7813
Fax: (253) 305-7804

Lee C. Nusich, OSB No. 772918
Lane Powell PC
601 SW Second Avenue
Suite 2100
Portland, OR 97204-3158
Telephone: (503) 778-2100
Fax: (503) 778-2200

IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF OREGON, EUGENE DIVISION

In re:

MCGRATH'S PUBLICK FISH HOUSE, INC., an Oregon corporation,

Debtor.

CASE NO. 10-60500-fra11

KEYBANK'S OBJECTION TO EMPLOYMENT OF CORPORATE RECOVERY ASSOCIATES AS BUSINESS AND FINANCIAL ADVISOR TO CREDITORS' COMMITTEE

KeyBank National Association and Key Equipment Finance (collectively, "KeyBank"), a creditor and party in interest herein, objects to the application of the unsecured creditors' committee to employ Corporate Recovery Associates ("CRA") as its business and financial advisor.

## I. BACKGROUND OF CASE

1.1 On February 3, 2010, McGrath's Publick Fish House, Inc. (the "Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

1.2 The Debtor owns and operates a chain of seafood restaurants in several western states.

1.3 Prior to the commencement of the Chapter 11 case, the debtor had been working with its major secured creditors in a non-bankruptcy workout. These creditors include General Electric

KEYBANK'S OBJECTION TO EMPLOYMENT
OF CORPORATE RECOVERY ASSOCIATES
AS BUSINESS AND FINANCIAL ADVISOR
TO CREDITORS' COMMITTEE- 1

KEYBANK LAW GROUP
1101 PACIFIC AVE.
LOWER LEVEL
TACOMA, WA 98402
TELEPHONE (253) 305-7813
TELECOPIER (253) 305-7804

Capital Corporation, GE Capital Franchise Finance Corporation, KeyBank, Key Equipment finance, Sterling Savings bank, Suntrust Equipment Finance & Leasing Corp., U.S. Bank, and U.S. Bancorp Equipment Finance, Inc.

1.4  A forbearance and modification agreement between the debtor and its largest creditors was amended and extended twice. After the second amendment expired on September 30, 2009, the debtor decided to close several restaurants and reorganize in Chapter 11.

1.5  The debtor is indebted to KeyBank in the approximate amount of $5,655,430 pursuant to various loans, leases, promissory notes, guarantees and interest rate swaps.

1.6  KeyBank is an undersecured creditor, and its unsecured deficiency claims total approximately $2.2 million (according to the debtor's Schedules and proposed disclosure statement). (The exact amount of KeyBank's deficiency claim will not be known until the disposition of the Orem, Utah and Scottsdale, Arizona restaurants in which KeyBank's primary collateral are leasehold deeds of trust.)

1.7  Since filing its Chapter 11 petition, the debtor and its attorneys have worked with its largest creditors to negotiate a consensual plan of reorganization.

1.8  On April 2, 2010, the debtor filed a disclosure statement and plan of reorganization. A hearing on the adequacy of the disclosure statement was held on May 6, 2010. In response to objections filed by several creditors and the U.S. Trustee, the debtor agreed to make certain modifications to the disclosure statement.

1.9  On May 18, 2010, the U.S. Trustee appointed a creditors' committee. One member resigned and the committee currently consists of the following four unsecured creditors:

KEYBANK'S OBJECTION TO EMPLOYMENT
OF CORPORATE RECOVERY ASSOCIATES
AS BUSINESS AND FINANCIAL ADVISOR
TO CREDITORS' COMMITTEE- 2

KEYBANK LAW GROUP
1101 PACIFIC AVE.
LOWER LEVEL
TACOMA, WA 98402
TELEPHONE (253) 305-7813
TELECOPIER (253) 305-7804

| Creditor | Claim Amount |
|---|---|
| Alderwood Mall LLC | $ 501,292 (Claim #81) |
| Legacy Air, Inc. | $ 13,642 (Claim #178) |
| Northwest Mechanical | $ 2,659 (Claim #30) |
| KNG, Inc. | $ 8,129 (Claim #74) |
| | $ 525,722 |

1.10 KeyBank's unsecured deficiency claim (approximately $2.2 million) is more than four times as much as the combined claims of the creditors' committee members. Other creditors hold large deficiency claims. See, e.g., GE Commercial Business Finance Property ($2,260,000); GE Commercial Franchise Finance Corp. ($1,674,868); General Electric Capital Corporation ($2,607,983); U.S. Bancorp Equipment finance, Inc. ($299,589); and Sterling Savings Bank ($284,552).

1.11 On June 14, 2010, the creditors' committee filed an application for an order authorizing the employment of Corporate Recovery Associates ("CRA") as a "business and financial advisor" to the committee, with authority to perform a vast array of services. CRA requests broad indemnification "for any claims arising from, related to, or in connection with CRA's engagement". See Application, p. 6, ¶ 8(a). CRA also seeks approval of its employment *nunc pro tunc*, as of May 19, 2010. The fees sought by CRA's personnel are substantial, ranging from $175 an hour for "Analysts" to $575 an hour for Mr. Feferman's services.

1.12 On June 17, 2010, the creditors' committee filed an application for an order authorizing the employment of the Los Angeles law firm, Arent Fox, LLP as its attorney in this case. The hourly rate for the principal attorney that will be providing legal services to the committee is $680, substantially higher than the prevailing rates for bankruptcy counsel in the Portland-Eugene area. See Attorney Employment Application, p. 5, ¶ 8.

KEYBANK'S OBJECTION TO EMPLOYMENT
OF CORPORATE RECOVERY ASSOCIATES
AS BUSINESS AND FINANCIAL ADVISOR
TO CREDITORS' COMMITTEE- 3

KEYBANK LAW GROUP
1101 PACIFIC AVE.
LOWER LEVEL
TACOMA, WA 98402
TELEPHONE (253) 305-7813
TELECOPIER (253) 305-7804

## II. ARGUMENT

*The Employment of CRA will Increase Administrative Expenses Substantially Without a Demonstrable Benefit to Unsecured Creditors*

2.1    <u>The Creditors' Committee is not Representative of the Unsecured Creditors in this Case</u>.

There are three general categories of unsecured claims within the general unsecured class:

| <u>Category</u> | <u>Claim Amount</u> | <u>Claim %</u> |
|---|---|---|
| General Prepetition Unsecured | $1.3 million-$1.9 million | 11.9% |
| Lease Rejection Claims | $850,000-$1.5 million | 9.4% |
| Undersecured Creditors' Deficiency Claims | $12 million-$12.5 million | 78.6% |

<u>See</u> Debtor's First Amended Disclosure Statement dated June 8, 2010 (proposed, not yet approved).

The creditors' committee is comprised of three creditors holding "general" prepetition claims, and one creditor with a lease rejection claim. General unsecured claims make up <u>11.9%</u> of unsecured claims, and lease rejection claims make up <u>9.4%</u>.[1]

Holders of deficiency claims have by far the largest stake in this reorganization case. Their claims total <u>78.6 %</u> of all unsecured claims. However, the committee does not include *any* creditor holding a deficiency claim, and the committee did not consult with KeyBank or other holders of large deficiency claims prior to filing the employment applications.

2.2    <u>The Creditors' Committee Must Act in the Interest of Unsecured Creditors as a Whole</u>.

A creditors' committee and its members have a fiduciary duty to act in the best interests of the unsecured creditors as a whole. <u>See, e.g.</u>, <u>In re SPM Mfg. Corp.</u>, 984 F.2d 1305, 1315 (1st Cir. 1993).

---

[1] Three of the creditors' committee members--Legacy Air, Inc. ($13,642 claim), Northwest Mechanical ($2,659 claim), and KNG, Inc. ($8,129 claim)--are trade creditors holding "general" unsecured claims. The other committee member--Alderwood Mall LLC ($501,292 claim)--has a lease rejection claim.

KEYBANK'S OBJECTION TO EMPLOYMENT
OF CORPORATE RECOVERY ASSOCIATES
AS BUSINESS AND FINANCIAL ADVISOR
TO CREDITORS' COMMITTEE- 4

KEYBANK LAW GROUP
1101 PACIFIC AVE.
LOWER LEVEL
TACOMA, WA 98402
TELEPHONE (253) 305-7813
TELECOPIER (253) 305-7804

No matter what the outcome of this case, 78.6 % of any distribution to unsecured creditors will go to holders of deficiency claims, and only 21.3 % will go to holders of general unsecured claims and lease rejection claims. Likewise, $78.60 out of every $100 in administrative expenses incurred by the creditors' committee comes at the expense of holders of deficiency claims.

General unsecured creditors and lease rejection creditors hold a small minority of the unsecured claims in this case. These unsecured creditors have the least to lose if administrative expenses are increased unnecessarily. This case will yield a small return to unsecured creditors and calls for the utmost restraint respecting administrative expenses—if not from the committee, then from the court.

2.3    Employment of CRA has not Been Shown to be Necessary. A party seeking to retain a professional whose fees constitute an expense of administration must first establish that the employment of the professional is reasonably necessary. In re Vettori, 217 B.R. 242, 245 (Bankr. N.D. Ill. 1998) ("the employment [of a professional] must be in the best interest of the estate"); Fed.R.Bankr.P. 2014 ("the application [for employment] shall state the specific facts showing the necessity for the employment").

The creditors' committee wants to employ CRA to perform a broad array of ill-defined services with no limitation on the amount of fees it may incur. This only invites problems.

The committee should not be given a blank check to employ professionals without considering the reasonable views of holders of more than three-fourths of the unsecured claims.

The court should require the committee to poll holders of unsecured deficiency claims to determine if a majority of these creditors support employment of CRA. Nine creditors with deficiency claims hold 78.6% of all unsecured claims. If a majority in dollar amount of these nine

KEYBANK'S OBJECTION TO EMPLOYMENT
OF CORPORATE RECOVERY ASSOCIATES
AS BUSINESS AND FINANCIAL ADVISOR
TO CREDITORS' COMMITTEE- 5

KEYBANK LAW GROUP
1101 PACIFIC AVE.
LOWER LEVEL
TACOMA, WA 98402
TELEPHONE (253) 305-7813
TELECOPIER (253) 305-7804

creditors opposes employment of CRA, then the court should deny the creditors' committee's employment application as unnecessary.

If the court allows the committee to employ CRA, it should impose reasonable limits on both hourly rates and overall fees. A maximum hourly rate of $300 with a fee cap of $35,000-$50,000 should be sufficient to enable CRA to review the debtor's financial data, confer with the debtor's financial advisor, and advise the committee of the feasibility the debtor's plan of reorganization. At this stage in the reorganization case, this is a reasonable budget to enable the committee to obtain independent analysis and advice concerning the debtor's plan.

2.4  The Committee's Request for Indemnification of CRA is Unreasonable and Improper. Section 328(a) of the Code provides that employment of professional persons "on any reasonable terms or conditions". 11 U.S.C. § 328(a). The creditors' committee seeks indemnification for CRA without stating any grounds therefor or showing why it is necessary or reasonable to grant the advisor such protection.

As the proponent of CRA's employment, the committee has the burden to demonstrate that the terms of employment, including indemnification, are reasonable. See In re Metricom, Inc., 275 B.R. 364, 371 (Bankr. N.D. Cal. 2002). See also, Unsecured Creditors' Committee v. Pelofsky (In re Thermadyne Holdings Corp.), 283 B.R. 749 (BAP 8th Cir. 2002) (affirming denial of indemnification and exculpation for financial advisory firm retained by creditors' committee).

If the court authorizes employment of CRA, it should condition its approval on deletion of the indemnification provision.

2.5  The Committee's Request to Approve CRA's Employment Nunc Pro Tunc is Improper. The creditors' committee also requests that the employment of CRA be granted nunc pro tunc, as of

KEYBANK'S OBJECTION TO EMPLOYMENT
OF CORPORATE RECOVERY ASSOCIATES
AS BUSINESS AND FINANCIAL ADVISOR
TO CREDITORS' COMMITTEE- 6

KEYBANK LAW GROUP
1101 PACIFIC AVE.
LOWER LEVEL
TACOMA, WA 98402
TELEPHONE (253) 305-7813
TELECOPIER (253) 305-7804

May 19, 2010. An order <u>nunc pro tunc</u> (literally "now for then") generally refers to situations in which the court's records do not accurately reflect its actions. See <u>A.B.C. Packard, Inc. v. General Motors Corp.</u>, 275 F.2d 63, 75 (9th Cir. 1960) (the phrase <u>nunc pro tunc</u> "is merely descriptive of the inherent power to make its records speak the truth—to record that which was actually done, but omitted to be recorded.").

The most common use of <u>nunc pro tunc</u> orders in bankruptcy "is to rectify the tardy appointment of counsel under Bankruptcy Code § 327, to permit counsel to be paid for the interim period before the order is entered." <u>In re Parkway Calabasis</u>, 89 B.R. 832, 839 (Bankr.C.D.Cal.1988), aff'd, 949 F.2d 1058 (9th Cir. 1991). The Ninth Circuit has stated that <u>nunc pro tunc</u> relief, even for such ministerial orders as those approving an attorney's employment, is permissible only in "exceptional circumstances." See <u>In re Atkins</u>, 69 F.3d 970, 974 (9th Cir. 1995); <u>In re Occidental Fin. Group, Inc.</u>, 40 F.3d 1059, 1062 (9th Cir. 1994).

No exceptional circumstances exist here. Therefore, if the court authorizes employment of CRA, its approval should be prospective, not retroactive.

### III. CONCLUSION

Based on the foregoing, KeyBank respectfully requests that the court deny the application to employ Corporate Recovery Associates as business and financial adviser to the creditors' committee.

DATED this 23rd day of June 2010.

KEYBANK LAW GROUP

/s/ Ronald W. Goss
Ronald W. Goss, WSBA #21575
Attorney for KeyBank

KEYBANK'S OBJECTION TO EMPLOYMENT
OF CORPORATE RECOVERY ASSOCIATES
AS BUSINESS AND FINANCIAL ADVISOR
TO CREDITORS' COMMITTEE- 7

KEYBANK LAW GROUP
1101 PACIFIC AVE.
LOWER LEVEL
TACOMA, WA 98402
TELEPHONE (253) 305-7813
TELECOPIER (253) 305-7804